# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 18-5280**

**October Term, 2019**

FILED: DECEMBER 21,2020

ASSASSINATION ARCHIVES AND RESEARCH CENTER,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00160)

Before: PILLARD and RAO, *Circuit Judges*\*

## A M E N D E D   J U D G M E N T

This appeal was considered on the record and on the briefs and oral arguments of the parties. After according the issues full consideration, the Court is satisfied that appropriate disposition of the appeal does not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). For the reasons stated below, it is hereby

**ORDERED** and **ADJUDGED** that the grant of the motion for summary judgment and denial of the cross-motion for summary judgment be **AFFIRMED**.

In this Freedom of Information Act (FOIA) case, the Assassination Archives and Research Center (the Center) appeals an order of the district court granting the Central Intelligence Agency's (CIA) motion for summary judgment and denying the Center's cross-motion for summary judgment. At issue is whether, in response to FOIA requests by the Center, the CIA permissibly withheld pursuant to FOIA Exemption 5, 5 U.S.C. § 552(b)(5), portions of intra-agency

---

\* The late Senior Circuit Judge Williams was a member of the panel and participated in the disposition of the matter on October 11, 2019, before his death on August 7, 2020. Judges Pillard and Rao have acted as a quorum with respect to the amended judgment. *See* 28 U.S.C. § 46(d).

1

communications relating to the FOIA process itself.

On August 25, 2012, the Center submitted to the CIA a request for all records "pertaining to the CIA's study in 1963 of plots to assassinate Adolph Hitler" or "to communications by Allen Dulles regarding plots to assassinate Adolph Hitler" during Dulles's service in the CIA and a related office. After the CIA returned a determination that it had no responsive records, the Center submitted a supplementary request. In addition to somewhat expanding the scope of the previous request, the Center's second letter requested "[a]ll index entries or other records reflecting the search for records responsive to this request in its original or amended form, including all search [terms] used with each of the components searched."

As set forth in declarations from CIA Information Review Officer Antoinette Shiner, who was involved in responding to the Center's amended FOIA request, CIA staff searched for responsive records in the files of eight different CIA sub-offices that the agency identified as "the locations reasonably expected to contain" the requested materials. Shiner Decl. (Jan. 19, 2018) at 2. Those offices were: "the Directorate of Analysis . . . ; Directorate of Operations . . . , including its operational files; the Office of the Director, the Director's Action Center, the Office of the General Counsel, the Office of Congressional Affairs, the Center for the Study of Intelligence (which is part of the CIA's Talent Center) and the CIA's history staff office." *Id*. at 2-3. Within each office, CIA staff searched "all relevant office databases, Agency share drives, and archival records." *Id*. at 3. In carrying out each search, CIA staff used a wide variety of terms, including but not limited to "Hitler Assassination," "Hitler Plot," "1963 assassination study," and "Dulles communication Hitler." *Id*. at 4-5; Shiner Decl. (Oct. 13, 2017) at 3. Each of those terms was searched both as a complete phrase and as separate terms. For example, a search for "Hitler Assassination" would have returned all documents containing that exact phrase as well as all documents containing both "Hitler" and "assassination" somewhere in its body. Shiner Decl. (Jan. 19, 2018) at 5. Staff then reviewed each document uncovered by the searches and determined whether it was responsive to the Center's particular request. *Id*.

In addition to directing those searches, Shiner also consulted with the CIA's Chief Historian, who is "very knowledgeable about the Agency's holdings with respect to" the subject matter at issue here. *Id*. at 3. The Chief Historian "personally conducted searches of history staff files for any reference to studies of anti-Hitler plots dating from the 1963 time frame," but did not uncover any additional responsive documents. *Id*. at 3-4. The Chief Historian advised that, "due to the age of the subject matter and narrow scope of [the] request focusing on anti-Hitler plots, there would not be many responsive documents and anything related to assassination studies would likely be found at the National Archives." *Id*. at 4. Based on our review of the redacted records, the declarations, and the CIA's *Vaughn* index, we granted summary affirmance to the CIA as to the adequacy of the CIA's search and the propriety of its application of FOIA Exemptions 1, 3, and 6, some of which were not contested. *Assassination Archives & Research Ctr. v. CIA*, No. 18-5280, 2019 WL 691517 (D.C. Cir. Feb. 15, 2019).

The only remaining issue is the permissibility of the Exemption 5 redactions to five records the CIA produced, which appear to be CIA internal forms used in processing the Center's FOIA

requests and produced pursuant to the Center's request for records of the FOIA search process itself. The Center challenges the CIA's use of the deliberative privilege on the grounds that the information at issue is purely factual, reporting what the CIA found in its searches. Oral Arg. Rec. at 10:39-11:01; Appellant Br. 21-23. The CIA, in turn, argues that the withheld materials would reveal the decision-making process behind its final response to the Center's FOIA request. Appellee Br. 7-17.

We now hold that the CIA has permissibly invoked Exemption 5. Under FOIA Exemption 5, agencies need not turn over "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5)—*e.g.*, records protected by the Executive's deliberative process privilege. *See EPA v. Mink*, 410 U.S. 73, 85-90 (1973). The privilege covers information that is both "predecisional" and "deliberative." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Documents are predecisional if they were "generated before the adoption of an agency policy," and deliberative if they "reflect[] the give-and-take of the consultative process." *Id*.

Here, the CIA invokes Exemption 5 to shield portions of the five internal FOIA task forms mentioned above. Specifically, the CIA has redacted from each form the substance of the intra-agency communication "[a]uthored by [the] Agency component employee tasked with the search" for the benefit of the agency official directing the CIA's internal records search. J.A. 217-219, 296-305.

The withheld communications indisputably precede the CIA's decision to release records to the Center. In addition, the redacted content "reflects the give-and-take" of a "consultative process" through which the agency sought to identify records within its possession potentially responsive to the Center's requests. *Id.* 189-90, 354, 357. We have previously held the privilege applicable to "factual material . . . assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action," *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993), and we have described a "recommendation to a supervisor on a matter pending before the supervisor" as "a classic example of a deliberative document," *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015). Taken together, the entries in the agency's *Vaughn* index, the declarations, the forms themselves, and the context in which they are used make it sufficiently apparent that the redacted text describes the efforts of staff "in extracting pertinent material" and any issues they encountered along the way. In context, it is evident that the redacted matter amounted to predecisional communications from staff made for the purpose of informing the agency's ultimate decision as to what the law required of the Agency in response to the Center's FOIA request. *See* 5 U.S.C. § 552(a).

It suffices that the redactions on the FOIA forms reflect some predecisional agency give-and-take; the Center does not challenge the CIA's segregation efforts. *See* Appellant Br.; Appellee Mot. Summ. Affirmance 4 n.3. We therefore affirm the district court's grant of summary judgment to the CIA and denial of summary judgment to the Center on the issue of the CIA's withholdings under Exemption 5.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to issue the mandate forthwith.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:  /s/

Daniel J. Reidy
Deputy Clerk